## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **RAYMOND MERSING**<br>11 Jean Drive<br>Towaco, New Jersey 07082, | : <br> : <br> : <br> : | |
| **RM SALES, INC.**<br>11 Jean Drive<br>Towaco, New Jersey 07082, | : <br> : <br> : <br> : | |
| *Plaintiffs* | : <br> : | |
| v. | : <br> : | |
| **2 HYPE, INC.**<br>1384 Broadway<br>Suite 902<br>New York, New York 10018 | : <br> : <br> : <br> : | Civil Action No. |
| **DAVID BAREIRO**<br>1384 Broadway<br>Suite 902<br>New York, New York 10018 | : <br> : <br> : <br> : | |
| **MARK ARAZI**<br>1384 Broadway<br>Suite 902<br>New York, New York 10018, | : <br> : <br> : <br> : | |
| *Defendants.* | : <br> : | |

## <u>COMPLAINT</u>

### I. <u>THE PARTIES</u>

1.  Plaintiff Raymond Mersing ("Mersing") is an adult individual who resides at 11 Jean Drive, Towaco, New Jersey 07082, and who is domiciled in the State of New Jersey.

2.     Plaintiff RM Sales, Inc. ("RM Sales") is a corporation organized pursuant to the laws of the State of New Jersey, having its principal place of business at 11 Jean Drive, Towaco, New Jersey 07082, and which is domiciled in the State of New Jersey, and which is therefore deemed to be a resident of the State of New Jersey.

3.     Defendant 2 Hype, Inc. ("2 Hype") is a corporation organized pursuant to the laws of the State of New York, which has its principal place of business at 1384 Broadway, Suite 902, New York, New York 10018, and which is therefore domiciled in and a resident of the State of New York.

4.     Defendant David Bareiro is an adult individual who resides in the State of New York, and who also maintains a place of business -- and is therefore amenable to service of process – at 1384 Broadway, Suite 902, New York, New York 10018.

5.     Defendant Mark Arazi is an adult individual who resides in the State of New York, and who also maintains a place of business -- and is therefore amenable to service of process – at 1384 Broadway, Suite 902, New York, New York 10018.

## II. JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over the claims and causes of action alleged herein pursuant to 28 U.S.C. Section 1332(a)(1), because each Plaintiff is a citizen of the State of New Jersey, and each Defendant is a citizen of the State of New York, and the amount of the claims brought by each Plaintiff against each Defendant is in excess of Seventy-Five Thousand and 00/100 ($75,000.00) Dollars, exclusive of interest and costs.

7.     Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b)(2), because a substantial number of transactions and occurrences giving rise to Plaintiffs' claims alleged in this Complaint arose or occurred in this judicial district.

## III.   FACTS COMMON TO ALL CLAIMS.

8.     Mersing has worked in the name-brand footwear industry for approximately twenty (20) years.

9.     At all times relevant to the claims alleged in this Complaint, Geoffrey Allen Corporation ("Geoffrey Allen") was an apparel and footwear company headquartered in northern New Jersey, which had licenses to design, manufacture, and distribute, among other products, footwear under the Coogi, Beverly Hills Polo Club, and National Basketball Association (NBA) names.

10.     In or about 2011, Mersing was an independent footwear sales representative for Geoffrey Allen.

11.     On or about December 19, 2011, Mersing formed Plaintiff RM Sales, Inc., to function as a national sales agency focusing on the sale of name-brand footwear.

12.     In connection with the formation of RM Sales, Mersing terminated his status as Geoffrey Allen's independent footwear sales representative for the northeastern United States.

13.     When Mersing started RM Sales in 2012, that company's sole client was Geoffrey Allen.

14.     When Mersing started RM Sales in 2012, the agency had five sales

representatives located across the continental United States in addition to Mersing, all of whom sold branded footwear for which the licenses were held by Geoffrey Allen.

15.　Following the formation of RM Sales, that company's primary business focus was selling Coogi, Beverly Hills Polo Club, and NBA brand footwear on behalf of Geoffrey Allen.

16.　In conjunction with starting RM Sales, Mersing arranged for that company to lease office space in New York City in January, 2012, to use as a combined showroom and office; the space leased was located at 1385 Broadway, Suite 408, New York, New York 10018, between West 37th and West 38th Streets.

17.　In early 2012, the office located next to RM Sales --being Suite 409-410 -- was occupied by 2 Hype and the individual Defendants.

18.　Plaintiffs believe and therefore aver that Defendants David Bareiro and Mark Arazi are the controlling stockholders, directors and officers of 2 Hype.

19.　In early 2012, 2 Hype was a small start-up company in the footwear business.

20.　In early 2012, 2 Hype was primarily engaged in the business of importing non-branded footwear (i.e., footwear containing either no brand name or an unknown name) and selling this merchandise to discount and low-end retailers.

21.　As of early 2012, Defendants had little or no experience arranging for the design, manufacture and sale of name-brand footwear to retailers.

22.　In or about early 2012, 2 Hype acquired the license to design, manufacture, and distribute footwear containing the Akademiks label.

4

23.     Akademiks is an apparel brand popular among young, primarily urban, consumers; a number of well-known American music and pop-culture celebrities have worn Akademiks apparel.

24.     In or about February/March, 2012, Defendants David Bareiro and Mark Arazi approached Mersing and asked if he would assist them in attempting to market and sell footwear to be manufactured under the Akademiks brand and name for which 2 Hype had recently acquired a license for footwear.

25.     More specifically, Defendants asked Mersing to assist them with product input, including what styles and quality to select and/or order from overseas footwear manufacturers and all aspects of sales for the Akademiks brand, including but not limited to selling that branded footwear to retailers, using RM Sales' personal relationships and experienced sales representatives.

26.     As a result of Defendants Bareiro and Arazi approaching Mersing, discussions ensued concerning Plaintiffs entering into a business relationship with Defendants, whereby they would receive the benefit of Mersing's years of experience in the branded footwear business, particularly to enable Defendants to maximize the value of the license rights they had acquired to sell Akademiks branded footwear.

27.     As a result of the aforementioned discussions, on or about April 1, 2012, Mersing and Defendants entered into a written agreement (hereinafter "the April 1, 2012 Agreement") concerning collaboration between Plaintiff and Defendant 2 Hype, Inc.  (An unsigned copy of the April 1, 2012 Agreement is attached hereto and labeled "Exhibit A"; Plaintiff does not have a signed copy of the

April 1, 2012 Agreement); further, the parties subsequently modified that Agreement, so that while it had been signed by Mersing in his individual capacity, all commissions earned pursuant to that Agreement were invoiced by RM Sales to 2 Hype, the 2 Hype checks paying those Invoices were issued to RM Sales, the 1099s issued for those sales in a given calendar year were in the name of RM Sales, RM Sales paid the expenses which were stated to be Mersing's responsibility under that Agreement, and it was RM Sales' sales representatives who marketed and sold Akademiks branded footwear for 2 Hype; as a consequence, the parties by their course of conduct and dealings amended the April 1, 2012 Agreement so that the party to which commissions were payable was RM Sales, as opposed to Mersing individually.

28.    An additional agreed term of the April 1, 2012 Agreement was that the commission payable would be 8 percent on regular priced goods RM Sales sold on behalf of 2 Hype, and with a sliding scale for the commission payable on goods priced at a discount.

29.    The sales goals for RM Sales under the April 1, 2012, Agreement were in fact met and satisfied by RM Sales during 2012.

30.    Rocawear is an American clothing and apparel manufacturer and licensor which was founded in or about the late 1990s by Shawn "Jay-Z" Carter and his then-business partner Damon Dash.

31.    Since in or about 2007, the Rocawear brand has been owned by Iconix Brand Group ("Iconix").

32.    In or about 2013, Mersing – using his substantial contacts in the

6

branded footwear business – was able to initiate discussions with Iconix concerning the possibility of Mersing obtaining the license to design, manufacture, and distribute footwear containing the Rocawear label.

33.   In or about September, 2013, after several meetings with Iconix' representatives, Mersing succeeded in reaching an understanding with Iconix that it would provide him with the Rocawear license for footwear.

34.   In or about September, 2013, Defendants became aware that Mersing had reached an agreement with Iconix for Mersing to obtain the license to sell Rocawear branded footwear.

35.   After Mersing had reached the understanding and agreement with Iconix referred to in the preceding paragraphs of this Complaint, Mersing intended to approach Geoffrey Allen to offer that company the license rights he had successfully obtained, which would have resulted in Geoffrey Allen entering into a formal written License Agreement with Iconix to sell Rocawear branded footwear, and with RM Sales then handling all sales of footwear sold by Geoffrey Allen bearing the Rocawear brand.

36.   However, before Mersing approached Geoffrey Allen to offer it the opportunity described in the preceding paragraph of this Complaint, Defendants Bareiro and Arazi, on behalf of themselves and 2 Hype, pleaded with Mersing to give Defendants the opportunity to be the licensee under the License Agreement to be entered into with Iconix for the sale of footwear bearing the Rocawear brand.

37.   To induce Mersing to allow 2 Hype to become the licensee under the License Agreement which Iconix have agreed to grant to Mersing for the sale of

footwear bearing the Rocawear brand, Defendants Bareiro and Arazi represented to Mersing that if he would allow 2 Hype to become the licensee on that License Agreement, then (i) Mersing and RM Sales would handle all sales of Rocawear-branded footwear for 2 Hype, (ii) Plaintiff would at some point "next year," meaning in 2014, become a 33 1/3% shareholder/owner of 2 Hype, Inc., without having to contribute or pay in any money to acquire that stock ownership interest, (iii) RM Sales would be paid an 8% commission on all sales of Rocawear-branded footwear, plus a 2% override on total sales volume, with no cap on those commissions, and Plaintiff and RM Sales would also handle all sales for 2 Hype, Inc.'s other branded products, in connection with which the agreed commissions would be payable.

38.    Acting in substantial and justifiable reliance on Defendants' representations and inducements, as stated in the preceding paragraph of this Complaint, in or about September, 2013, Mersing, RM Sales and Defendants entered into a verbal agreement (hereinafter "the September, 2013, Agreement"), which to some extent modified the April 1, 2012 Agreement, but which also involved substantial additional commitments made to Mersing by Defendants, which were justified and warranted by the fact that Mersing was allowing the License Agreement he had negotiated with Iconix for the Rocawear brand to be placed in the name of 2 Hype, Inc., as licensee.

39.    The terms of the September, 2013, Agreement entered into between Plaintiffs and Defendants were as follows:

39.1.    Mersing would arrange for Iconix to prepare the License Agreement for the Rocawear brand for footwear to be in the

8

name of Defendant 2 Hype, Inc., as licensee; that license granted to 2 Hype, Inc. the valuable right to design, manufacture, and distribute footwear containing the Rocawear brand;

39.2.   Mersing and RM Sales would handle all aspects of sales of Rocawear-branded footwear for 2 Hype, Inc.;

39.3.   Mersing and Defendants would work together regarding all aspects of the Rocawear footwear business, including decisions concerning product styles, construction quality, quantities to order, and prices;

39.4.   In 2014, Mersing would formally become a 33⅓ percent shareholder/owner of Defendant 2 Hype, Inc., Mersing would have an equal say in the management of that company, and Mersing would not have to pay in or contribute any money in exchange for that for that ownership stake and management position;

39.5.   Commencing immediately, RM Sales would continue to be paid by 2 Hype, Inc., the $10,000 per month draw against commissions, payable at the beginning of each month, which had been previously agreed to under the April, 2012, Agreement;

39.6.   RM Sales would be entitled to a commission of eight (8%) percent of sales which it generated on behalf of 2 Hype, Inc.;

39.7.   There would be no cap on RM Sales' commissions or earnings;

39.8.   RM Sales' commission would be paid by the 15th of each month

9

following the month in which goods were shipped;

39.9. RM Sales would be paid a two (2%) percent override on total sales volume generated by Mersing and the other RM Sales' sale representatives, to be paid at the end of each quarter of the calendar year;

39.10. RM Sales would handle all aspects of Defendant 2 Hype, Inc.'s sales of other branded footwear, in addition to the Rocawear and Akademiks-branded footwear;

39.11. RM Sales would be responsible for all of Mersing's and the other sales representatives' travel expenses, including hotel, airfare, meals, and car rentals;

39.12.  RM Sales would pay for all national trade show expenses, except for the twice-per-year Las Vegas show, for which 2 Hype, Inc., would be responsible;

39.13. Mersing would pay for his own medical insurance coverage.

40.     After the September, 2013, Agreement was entered into, and after the formal written License Agreement with Iconix --for the Rocawear brand-- was entered into between and signed by representatives of Iconix and 2 Hype, Defendants then approached Mersing and asked him to end what to that point had been his and RM Sales' lucrative business relationships with Geoffrey Allen, meaning stop selling footwear for that company and devote all of his/their time, energy and efforts to selling footwear for 2 Hype.

41.     To induce Mersing to terminate his and RM Sales' business

10

relationships with Geoffrey Allen, and for him and RM Sales to devote all of their efforts to selling footwear for 2 Hype, Defendants promised Mersing that RM Sales would receive a $20,000.00 per month draw against commissions, Mersing's title with 2 Hype, Inc., would be President of Sales and Licensing, and Mersing was reassured of his and RM Sales' receipt of all of the benefits and compensation previously promised to him/it/them in connection with the September, 2013, Agreement.

42.    At the time Defendants made the promises to Mersing referenced in the preceding paragraph of this Complaint, to induce him to terminate his and RM Sales' relationships with Geoffrey Allen, Defendants Bareiro and Arazi were fully aware of the fact that, by terminating that relationship, Mersing and RM Sales would be foregoing substantial commissions he/it/they had been earning through that business relationship, as well as the monthly draw being paid to RM Sales in connection therewith.

43.    Based upon Defendants' promises and inducements as described in Paragraph 41 of this Complaint, and Defendants' reaffirmation of the promises they had made to him previously, as set forth in Paragraph 39 of this Complaint, Plaintiffs agreed to Defendants' request, and in connection therewith the parties entered into an oral agreement which modified and supplemented the September, 2013, Agreement, the terms of that modified agreement being as follows:

43.1.  Mersing and RM Sales would no longer handle sales for Geoffrey Allen, and they would devote all efforts to selling branded footwear for 2 Hype;

11

43.2.   2 Hype, Inc., would pay RM Sales a $20,000.00 per month draw against commissions;

43.3.   Mersing's job title with 2 Hype, Inc. would be President of Sales and Licensing; and

43.4.   All terms of the September, 2013, Agreement were reaffirmed and would remain in full force and effect, particularly the assurance that Mersing would become a 33 1/3% shareholder in 2 Hype by December 30, 2014.

44.   In the fall of 2014, through Mersing's initiative and meetings he had arranged, he negotiated an agreement to obtain for 2 Hype the license to sell Zoo York branded footwear, another brand for which the licensing rights were held by Iconix; Plaintiffs believe and aver that at some point in the spring of 2015, through contacts he had initiated in the fall of 2014, 2 Hype entered into a valuable written License Agreement with Iconix allowing 2 Hype to design, have manufactured and to sell Zoo York branded footwear.

45.   In or about late 2014, Mersing approached Defendants and asked when they would sign the paperwork pursuant to which Mersing would become the owner of a $33^{1/3}$% stock ownership interest in 2 Hype; in a response, he was told by Defendants that the Agreement would be signed by the end of the year.

46.   Mersing then prepared an Agreement --copy attached hereto as Exhibit "B"—in mid-December, 2014, which he delivered to Defendants; in response, he was told by Defendant Arazi that Defendant Bareiro was on a trip to China and the Agreement would be reviewed and signed when he returned.

47.    However, notwithstanding Defendants' repeated promises and assurances to Mersing, all of which were intended to and did induce him, among other things,  to (i) allow the License Agreement with Iconix for the Rocawear brand to be placed in the name of 2 Hype, and (ii) terminate his and RM Sales' profitable relationships with Geoffrey Allen, Defendants refused to have any further discussions with Mersing concerning him becoming a 33⅓ percent shareholder/owner of 2 Hype, whether by December 31, 2014, or at any time thereafter.

48.    On Monday, February 9, 2015, when Mersing arrived for work at his combined showroom and office at 1385 Broadway, Suite 408, he discovered that during the previous weekend, without his prior permission or authorization, Defendants Bareiro and Arazi, either alone or in concert with others:

48.1.  Had entered that showroom and office at 1385 Broadway,  Suite 408;

48.2.  Had removed all shoes which had been displayed and/or stored in that showroom/office; and

48.3.  Had removed from Mersing's desk -- located in that showroom/office -- various documents and business records, including but not limited to copies of orders for shoes, catalogues, and Plaintiff's signed copy of the April 1, 2012 Agreement.

49.    On or about February 12, 2015, Defendants sent to Mersing the e-mail attached hereto as Exhibit "C," attempting to unilaterally terminate the April 1,

2012, Agreement effective as of February 9, 2015; that e-mail also has the effect of Defendants breaching and defaulting under both the April 1, 2012, Agreement and the September, 2013, Agreement, as later modified by the parties.

## COUNT I - INTENTIONAL MISREPRESENTATION (FRAUD)
## Plaintiff Raymond Mersing v. Defendants David Bareiro and Mark Arazi

50.     The allegations contained in Paragraphs 1 through 49 of this Complaint are incorporated herein by reference as though the same were fully set forth at length.

51.     Plaintiffs believe and therefore aver that, at the time Defendants made the promises and assurances intended to induce him to make and enter into the oral September, 2013, Agreement, and the subsequent modification thereto, as described in Paragraphs 39 and 41 of this Complaint, and unbeknownst at that time to Mersing, Defendants did not intend to honor all terms and provisions of that Agreement, as modified by the parties, particularly including the most significant components thereof, i.e. that Mersing would become a 33 1/3% shareholder in 2 Hype by the end of 2014, and (ii) RM Sales would continue as the exclusive sales representative for all branded footwear for which 2 Hype was the licensee under a License Agreement.

52.     In entering into the September, 2013, Agreement, and the subsequent modification of that Agreement, as described previously in this Complaint, Mersing reasonably relied on the promises and representations made by Defendants, particularly including but not limited to their assurances that he would be a 33 1/3% shareholder in 2 Hype by the end of 2014, and that RM Sales would continue as the exclusive sales representative for 2 Hype's marketing and sale of branded footwear.

53.     Mersing now believes and avers that, at the time Defendants made the

14

promises and representations designed to induce him to enter into the September, 2013, Agreement, and the subsequent modification thereto, they did so for the purpose of obtaining for 2 Hype the License Agreement with Iconix for the Rocawear brand, and in conjunction therewith, to persuade Mersing to not allow that License Agreement to be placed in the name of Geoffrey Allen, and to accomplish those dual objectives Defendants materially represented to Mersing their intention to make him an equal 33 1/3% shareholder in 2 Hype by the end of 2014.

54.     Mersing's reliance on Defendants' promises and representations was reasonable and justifiable, given the parties' prior business dealings, particularly in connection with the 2 Hype License Agreement to sell Akademiks branded footwear.

55.     As a direct and proximate result of the fraudulent misrepresentations of Defendants Bareiro and Arazi, Mersing and RM Sales have suffered and sustained substantial damages and losses, including but not necessarily limited to the following:

(a)     Mersing's loss of a 33 1/3% ownership interest in 2 Hype, which Plaintiff believes and avers --subject to obtaining through discovery more current financial statements and other information from Defendants-- is an amount in excess of $4 Million;

(b)     Mersing's loss of distribution of profits associated with being a 33 1/3% shareholder in 2 Hype, subject to precise calculation following discovery in this proceeding;

(c)     RM Sales' unpaid commissions on completed sales of branded footwear on behalf of 2 Hype, during 2013, 2014 and the

beginning of 2015, in an amount believed to be approximately $50,000.00 to $60,000.00, reflecting the difference between commissions earned and commissions paid, and being subject to more precise calculation following discovery in this proceeding; and

(d)     RM Sales' lost commissions on sales for a reasonable period following that termination --which Plaintiffs allege to have been a period of approximately four months following February 12, 2015-- as a result of the precipitous termination of the parties' sales representative agreement, pursuant to which RM Sales was the exclusive agent selling branded footwear for 2 Hype, and in connection with which RM Sales had expended substantial monies on travel expenses, trade shows, and other costs, fees and charges for which it had agreed to be responsible, to lay the foundation for sales orders which would have been placed during that four month period immediately following February 12, 2015, with Plaintiffs alleging and averring that those lost commissions would be in an amount in excess of $90,000.00.

56.     In addition to the compensatory damages referenced in the preceding paragraph of this Complaint, Plaintiffs allege and aver that an award of punitive damages should be entered in their favor and against Defendants Bareiro and Arazi, based upon each one's intentional, willful and malicious conduct, in misrepresenting their true intentions and scheme to induce Mersing to place the Iconix License Agreement for Rocawear branded footwear in the name of 2 Hype, and in coercing

Mersing to terminate RM Sales' profitable business relationship with Geoffrey Allen, particularly to punish those Defendants for their conduct, and to deter them and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiff Raymond Mersing respectfully requests entry of judgment in his favor, and against Defendants David Bareiro, and Mark Arazi, jointly and severally, for compensatory damages in an amount in excess of Four Million and 00/100 ($4,000,000.00) Dollars, punitive damages in an amount in excess of One Million and 00/100 ($1,000,000.00) Dollars, plus costs of suit.

### COUNT II - INTENTIONAL MISREPRESENTATION (FRAUD)
### Plaintiff RM Sales, Inc. v. Defendants David Bareiro and Mark Arazi

57.     The allegations contained in Paragraphs 1 through 56 of this Complaint are incorporated herein by reference as though the same were fully set forth at length.

58.     Plaintiffs believe and aver that the combined unpaid and lost commissions suffered by RM Sales as a result of Defendants' fraudulent misrepresentations, totaled in excess of One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars, consisting of approximately $60,000.00 for pre-termination commissions earned but not paid, and more than $90,000.00 for commissions lost during the four month period following Mersing's and RM Sales' termination by Defendants.

WHEREFORE, Plaintiff RM Sales, Inc., respectfully requests entry of judgment in its favor, and against Defendants David Bareiro, and Mark Arazi, jointly and severally, for compensatory damages in an amount in excess of One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars, punitive damages in an amount in

excess of One Million and 00/100 ($1,000,000.00) Dollars, plus pre-judgment and post-judgment interest and costs of suit.

### COUNT III - INTENTIONAL MISREPRESENTATION (FRAUD) (VICARIOUS LIABILITY)
### Plaintiff Raymond Mersing v. Defendant 2 Hype, Inc.

59.     The allegations contained in Paragraphs 1 through 58 of this Complaint are incorporated herein by reference as though the same were fully set forth at length.

60.     At all times when Defendants Bareiro and Arazi made the intentional material misrepresentations alleged previously in this Complaint, each was acting in his capacity as a duly authorized agent and representative of Defendant 2 Hype, Inc., and further, those misrepresentations were intended to directly benefit 2 Hype, Inc.

WHEREFORE, Plaintiff Raymond Mersing demands entry of judgment in his favor and against Defendant 2 Hype, Inc. for compensatory damages in an amount in excess of Four Million and 00/100 ($4,000,000.00) Dollars, punitive damages in an amount in excess of One Million and 00/100 ($1,000,000.00) Dollars, plus costs of suit.

### COUNT IV - INTENTIONAL MISREPRESENTATION (FRAUD) (VICARIOUS LIABILITY)
### Plaintiff RM Sales, Inc. v. Defendant 2 Hype, Inc.

61.     The allegations contained in Paragraphs 1 through 60 of this Complaint are incorporated herein by reference as though the same were fully set forth at length.

WHEREFORE, Plaintiff RM Sales, Inc., demands entry of judgment in its favor and against Defendant 2 Hype, Inc. for compensatory damages in an amount in

excess of One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars, punitive damages in an amount in excess of One Million and 00/100 ($1,000,000.00) Dollars, plus pre-judgment and post-judgment interest and costs of suit.

<strong>COUNT V - BREACH OF CONTRACT</strong><br><strong><u>Plaintiff RM Sales v. Defendants 2 Hype, Inc., David Bareiro, and Mark Arazi</u></strong>

62.     The allegations contained in Paragraphs 1 through 61 of this Complaint are incorporated herein by reference as though the same were fully set forth at length.

63.     Defendants have failed and refused to pay to Plaintiff RM Sales all of the commissions, including 2% override, earned pursuant to the April 1, 2012, Agreement, as modified by the September, 2013 Agreement, and the subsequent modification thereto, as well as the commissions lost on sales which occurred within the four month period following Defendants' termination of their business relationship with RM Sales, all as alleged previously in this Complaint, with the total amount of those pre-termination and post-termination commissions being in excess of $150,000.00.

WHEREFORE, Plaintiff RM Sales, Inc., demands entry of judgment in its favor and against Defendants 2 Hype, Inc., David Bareiro, Mark Arazi jointly and severally, in an amount in excess of One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars, plus pre-judgment and post-judgment interest and costs of suit.

## COUNT VI - BREACH OF CONTRACT
**Plaintiff Raymond Mersing v. Defendants 2 Hype, Inc., David Bareiro, and Mark Arazi**

64.     The allegations contained in Paragraphs 1 through 63 of this Complaint are incorporated herein by reference as though the same were fully set forth at length.

65.     Defendants have failed and refused to deliver to Mersing the stock ownership interest to which he is entitled under the September, 2013 Agreement entered into with Defendants, and the subsequent modification thereto, the value/amount thereof being in excess of Four Million and 00/100 ($4,000,000.00) Dollars.

WHEREFORE, Plaintiff Raymond Mersing demands entry of judgment in his favor and against Defendants David Bareiro, Mark Arazi and 2 Hype, Inc., jointly and severally, for compensatory damages in an amount in excess of Four Million and 00/100 ($4,000,000.00) Dollars, plus pre-judgment and post-judgment interest and costs of suit.

## COUNT VII - PROMISSORY ESTOPPEL
**Plaintiff Raymond Mersing v. Defendants 2 Hype, Inc., David Bareiro, and Mark Arazi**

66.     The allegations contained in Paragraphs 1 through 65 of this Complaint are incorporated herein by reference as though the same were fully set forth at length.

67.     In the alternative to the causes of action pleaded previously in Counts I and VI of this Complaint, Mersing alleges and avers that Defendants promised to him -- intending to induce him to confer substantial benefits on Defendants as a

20

consequence of relying on those promises, including allowing the Iconix License Agreement for the Rocawear brand to be placed in the name of 2 Hype, Inc., as licensee-- that, by December 31, 2014, Mersing would be made a 33⅓ percent shareholder/owner of 2 Hype, that Mersing would at that point have an equal say in the management of that corporation, that Mersing would not have to contribute any money to the Defendants in exchange for that ownership interest and the related management position, that RM Sales would be paid a $20,000 per month draw against commissions, that it would be paid commissions of 8 percent on sales it generated on behalf of branded footwear for which 2 Hype is the licensee, as well as a 2 percent override on total sales volume, and that RM Sales would continue as the sales representative for a reasonable time period considering the work, effort and expenditures it had made pursuant to the April 1, 2012 Agreement, as modified by the September, 2013 Agreement and subsequent modifications thereto.

68.    In substantial reliance on Defendants' promises and inducements, Mersing allowed the License Agreement with Iconix for the Rocawear brand to be placed in the name of 2 Hype, as licensee, and further, Mersing terminated his and RM Sales' business relationship with Geoffrey Allen, assuring Defendants that Plaintiff and RM Sales would devote substantially all of his/their time and efforts to selling branded footwear solely for 2 Hype.

69.    Defendants did expect and should have reasonably expected that their promises and inducements as set forth in the preceding two paragraphs of this Complaint, would induce Plaintiffs to take action; more specifically, they knew that Plaintiff, in reliance thereon, would ask Iconix to prepare and enter into the

License Agreement for Rocawear branded footwear, under which the licensee would be 2 Hype, and further, Mersing and RM Sales ended his/its/their business relationship with Geoffrey Allen and commenced devoting all of their time and efforts to selling branded footwear for 2 Hype, Inc.

70.    Notwithstanding Defendants' promises intended to induce action by Plaintiffs, and the substantial benefits obtained by Defendants as a result of Plaintiffs' reasonable reliance on those promises and inducements, and Defendants failure and refusal to honor their commitments/promises, they failed and refused to make Mersing a 33⅓ percent shareholder/owner of 2 Hype, they abruptly terminated the sales representation relationship with RM Sales, and they failed to pay commissions earned, and also unjustly and illegally terminated RM Sales' right and opportunity to earn future commissions; indeed, as to the latter, Defendants went so far as to then utilize several of RM Sales' sales representatives after having terminated Mersing and RM Sales, after the February 12, 2015 email.

71.    Based on the foregoing, Defendants are liable to reimburse Mersing for all of his lost reliance and expectation damages suffered, based on the doctrine of promissory estoppel.

WHEREFORE, Plaintiff Raymond Mersing demands entry of judgment in his favor and against Defendants 2 Hype, Inc., David Bareiro, and Mark Arazi, jointly and severally, for compensatory damages in an amount in excess of Four Million and 00/100 ($4,000,000.00) Dollars, plus pre-judgment and post-judgment interest and costs of suit.

## COUNT VIII - PROMISSORY ESTOPPEL
### Plaintiff RM Sales, Inc. v. Defendants 2 Hype, Inc.,
### David Bareiro, and Mark Arazi

72.     The allegations contained in Paragraphs 1 through 71 of this Complaint are incorporated herein by reference as though the same were fully set forth at length.

73.     In the alternative to the causes of action pleaded in Count II and Count V of this Complaint, and based on the foregoing, Defendants are liable and indebted to RM Sales, on the basis of promissory estoppel, for compensatory damages in an amount in excess of $150,000.00.

WHEREFORE, Plaintiff RM Sales, Inc., demands entry of judgment in its favor and against Defendants 2 Hype, Inc., David Bareiro, and Mark Arazi, jointly and severally, for compensatory damages in an amount in excess of One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars, plus pre-judgment and post-judgment interest and costs of suit.

## COUNT IX - UNJUST ENRICHMENT/QUANTUM MERUIT
### Plaintiff Raymond Mersing  v. Defendants 2 Hype, Inc.,
### David Bareiro, and Mark Arazi

74.     The allegations contained in Paragraphs 1 through 73 of this Complaint are incorporated herein by reference as though the same were fully set forth at length.

75.     In the alternative to the causes of action pleaded in Counts I, VI and VII of this Complaint, Plaintiffs allege and aver that Defendants have received substantial and material benefit and gain, and have thereby been unjustly enriched, as a result of the substantial value Plaintiffs have conferred on Defendants,

particularly by generating sales for which commissions have not been paid in full, expending time, effort and money to generate sales as to which no commissions would be paid, and also by obtaining License Agreements --particularly for the Rocawear brand and the Zoo York brand-- as a direct and proximate result of substantial work, labor and services provided by Mersing and RM Sales.

76.     Defendants have failed, neglected and refused to compensate Plaintiffs for the substantial benefits and value conferred upon them by Plaintiffs, as alleged previously in this Complaint, notwithstanding that Defendants at all relevant times knew Plaintiffs were providing those services and benefits, that Defendants would receive material and substantial benefit therefrom, and that Plaintiffs expected to be paid the fair value of those benefits.

77.     The aforesaid enrichment of Defendants was at the expense of Plaintiffs.

78.     It would be inequitable, unconscionable, and a violation of public policy to permit Defendants to keep and retain the benefits conferred upon them by Plaintiffs, particularly the rights under the aforesaid License Agreements for Rocawear and for Zoo York, without Defendants being obligated to pay Plaintiffs the fair value therefor; as a consequence, Defendants would be unjustly and improperly enriched if not required to reimburse Plaintiffs for the fair and reasonable value of the services and benefits provided, particularly in connection with the License Agreements obtained for Defendants through Mersing's efforts.

79.     Plaintiffs believe and aver that it would be a substantial injustice to permit Defendants to receive and retain the benefits of Plaintiffs' work, labor,

services, particularly value associated with the License Agreements obtained by and through Mersing, without Defendants compensating Plaintiffs therefor, and the above-described circumstances are such that in equity and good conscience Defendants should make restitution to Plaintiffs.

80.     Based on the foregoing, Defendants are liable and indebted to Plaintiff Mersing for the full, fair and reasonable value of the services and benefits provided by and through him, for which Defendants have to date failed to make any payment, for which Plaintiff alleges and avers the value is in excess of Four Million and 00/100 ($4,000,000.00) Dollars..

WHEREFORE, Plaintiff Raymond Mersing demands entry of judgment in his favor and against Defendants 2 Hype, Inc., David Bareiro, and Mark Arazi, jointly and severally, in an amount in excess of Four Million Dollars ($4,000,000.00), plus interest and costs of suit.

### COUNT X - UNJUST ENRICHMENT
### Plaintiff RM Sales, Inc.  v. Defendants 2 Hype, Inc., David Bareiro, and Mark Arazi

81.     The allegations contained in Paragraphs 1 through 80 of this Complaint are incorporated herein by reference as though the same were fully set forth at length.

WHEREFORE, Plaintiff RM Sales, Inc., demands entry of judgment in its favor and against Defendants 2 Hype, Inc., David Bareiro, and Mark Arazi, jointly and severally, in an amount in excess of One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars, plus interest and costs of suit.

LAW OFFICES OF KEVIN T. FOGERTY


By: _____
       Kevin T. Fogerty, Esquire

Law Offices of Kevin T. Fogerty
1275 Glenlivet Drive, Suite 150
Allentown, PA  18106-3109
Tel.: (610) 366-0950
Fax: (610) 366-0955
kfogerty@fogertylaw.com

*Attorney for Plaintiffs Raymond Mersing and RM Sales, Inc.*

26